UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:22-cr-407-SDM-JSS
    18 U.S.C. § 371

GLORIA GUTIERREZ

### SUPERSEDING INFORMATION

The United States Attorney charges:

### COUNT ONE

#### A. Introduction

At all times material to this Superseding Information:

1. HIGHER EDUCATION INSTITUTION ("HEI") was an accredited academic institution that awarded associate degrees, certificates, and diplomas. HEI was located in the Middle District of Florida.

2. Andrea Mitchell ("MITCHELL") was employed by HEI from in or around November 2013, through in or around January 2019. MITCHELL served as a financial services manager whose responsibilities included, but were not limited to, student billing and student refund management, and her position afforded her access to HEI students' personal identifiable information ("PII"). MITCHELL used her position with HEI and her access to students' PII and other student data to cause the

creation of false and fraudulent checks drawn on illusory outstanding balances in HEI students' sponsorship accounts and, thereby, embezzle funds from HEI.

3.  Lester Best ("BEST") obtained false and fraudulent checks caused to be created by MITCHELL, recruited coconspirators to negotiate and cause the negotiation of said checks, often transported or otherwise accompanied coconspirators to financial institutions or ATMs for the purpose of negotiating said checks, typically compensated said coconspirators for their roles in the conspiracy using fraud proceeds, and received the majority of the fraud proceeds generated by the false and fraudulent checks he obtained for his own personal enrichment.

4.  GLORIA GUTIERREZ, a resident of the Middle District of Florida, negotiated, and caused to be negotiated, false and fraudulent checks caused to be created by MITCHELL and provided to her by BEST.

5.  A student identification number ("SIN") was a unique seven-digit number assigned to an HEI student as soon as he or she enrolled at HEI. A SIN was a means of identification assigned to each student and used for all internal systems within HEI. Authorized HEI employees, including MITCHELL, had access to SINs. Using a SIN, an HEI employee could access a student's PII.

6.  TUITION MANAGEMENT BUSINESS ("TMB") was a third-party provider that offered tuition management, a student information system, payment administration and processing, financial needs assessment, and online admissions/enrollment solutions for educational institutions.

7. COLLEGE SAVINGS PROGRAM ("CSP") was a college savings program offered in the state of Florida. CSP offered individuals the opportunity to develop a college savings plan for an intended beneficiary. The savings plan could be used to pay, among other expenses, the following: tuition, fees, certain room and board expenses, textbooks, specified supplies and equipment and internet service, and special needs services incurred in connection with enrollment or attendance.

8. "Student sponsorship accounts" were bank accounts set up by third party providers, such as TMB and CSP. When a student enrolled with HEI and was assigned a SIN, that student's SIN was also linked to any corresponding student sponsorship account. When a student required funds for class enrollment, textbooks, or other school-related expenses, funds were withdrawn from the student's sponsorship account to cover those costs.

9. ONLINE PLATFORM, SOFTWARE AND DATABASE ("OPS") was an enterprise resource planning system that provided secure access to information that various institutions needed to manage assets and information. HEI used OPS to store and access, in addition to other information, the following: financial information, admissions information, student registration information, and financial aid information. OPS also maintained students' PII, including names, SINs, addresses, and account balances. Each HEI employee had a unique HEI-assigned username and self-created password which granted that employee access to OPS's database.

10. Financial Institution #1, headquartered in North Carolina, had computer servers used for processing financial transactions, including cash withdrawals, which servers were located outside the State of Florida.

### B. The Conspiracy

11. From an unknown date, but at least as early as in or around December 2017, and continuing through in or around January 2019, in the Middle District of Florida and elsewhere, the defendant,

GLORIA GUTIERREZ,

did knowingly and voluntarily combine, conspire, confederate, and agree with others, both known and unknown to the United States Attorney, to commit wire fraud, in violation of 18 U.S.C. § 1343.

### C. Manner and Means of the Conspiracy

12. The manner and means by which the defendant and coconspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

    a. It was part of the conspiracy that conspirators would and did use, and cause to be used, MITCHELL's position with HEI and her access to students' PII and other student data to embezzle funds from HEI.

    b. It was further part of the conspiracy that MITCHELL would and did use, and cause to be used, SINs of current and former HEI students in order to access the students' sponsorship accounts, identify refunds made by HEI to TMB or

CSP, and locate entries in OPS of illusory outstanding balances in HEI students' sponsorship accounts.

  c. It was further part of the conspiracy that MITCHELL would and did aggregate, and cause to be aggregated, illusory outstanding balances in HEI students' sponsorship accounts to create the appearance of funds to back false and fraudulent checks.

  d. It was further part of the conspiracy that BEST would and did recruit coconspirators, including, but not limited to, GLORIA GUTIERREZ, to negotiate false and fraudulent checks.

  e. It was further part of the conspiracy that MITCHELL would and did change, and cause to be changed, the names of payees on false and fraudulent checks from either TMB or CSP to the names of coconspirators.

  f. It was further part of the conspiracy that MITCHELL would and did cause HEI to create false and fraudulent checks drawn on illusory outstanding balances in HEI students' sponsorship accounts.

  g. It was further part of the conspiracy that MITCHELL would and did cause HEI to issue false and fraudulent checks made payable to various coconspirators, none of whom were HEI students at the time.

  h. It was further part of the conspiracy that BEST would and did deliver, and cause to be delivered, false and fraudulent checks to coconspirators, including, but not limited to, GLORIA GUTIERREZ.

      i.      It was further part of the conspiracy that often BEST would and did transport and/or accompany coconspirators to financial institutions and ATMs for the purpose of said coconspirators negotiating false and fraudulent checks.

      j.      It was further part of the conspiracy that coconspirators, including, but not limited to, GLORIA GUTIERREZ, would and did negotiate, and cause to be negotiated, false and fraudulent checks—usually by cashing or depositing the checks—and would and did give most or all of the fraud proceeds from the checks to BEST.

      k.      It was further part of the conspiracy that typically BEST would and did compensate coconspirators for their roles in the conspiracy using fraud proceeds from false and fraudulent checks negotiated.

      l.      It was further part of the conspiracy that conspirators would and did use fraud proceeds from false and fraudulent checks negotiated to pay personal expenses and otherwise for their personal enrichment.

      m.      It was further part of the conspiracy that the conspirators would and did perform acts and make statements to misrepresent, hide and conceal, and cause to be misrepresented, hidden and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

### D.    Overt Acts

13.    In furtherance of the conspiracy, and to effect its object, the conspirators committed the following overt acts, among others, in the Middle District of Florida and elsewhere:

      a.    Between in or around December 2017 and in or around January 2019, GLORIA GUTIERREZ received nine false and fraudulent checks totaling approximately $53,285.56 from BEST.

      b.    On or about February 7, 2018, GLORIA GUTIERREZ caused a wire transfer effectuating the negotiation of HEI check #355746 and corresponding cash withdrawal of $8,097.61 from the HEI account ending in -6491 at Financial Institution #1.

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1. The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 371, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property constituting, or derived from, proceeds the person obtained directly or indirectly, as a result of such violation.

3. The assets to be forfeited include, but are not limited to, an order of forfeiture in the amount of at least $53,285.56.

4. If any of the property described above, as a result of any act or omission of the defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value;

    e.    has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

ROGER B. HANDBERG
United States Attorney

By: *[signature]*
Candace Garcia Rich
Assistant United States Attorney

By: *[signature]*
Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

8